# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STUART JOHN GILBERT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-228-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Stuart John Gilbert requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born August 2, 1971, and was forty-three years old at the time of the administrative hearing (Tr. 212, 219). He has at least a ninth grade education,[2] and has worked as a forklift operator, dump truck driver, siding installer, food mixer, and unloader (Tr. 43, 66, 175). The claimant alleges he has been unable to work since May 14, 2013, due to problems with his back and left elbow, migraines, difficulty reading and writing, memory problems, depression, nerves, claustrophobia, hallucinations, and difficulty getting along with others (Tr. 249).

**Procedural History**

On August 5, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 212-24). His applications were denied. ALJ Deborah Rose held an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 23, 2015 (Tr. 11-21). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

---

[2] The claimant reported to consultative examiner Dr. Spray that he dropped out of school around ninth grade, but stated he completed twelfth grade on his disability report and at the administrative hearing (Tr. 37, 250, 366).

**Decision of the Administrative Law Judge**

The ALJ made her decision at steps four and five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§404.1567(c), 416.967(c), with frequent stooping, and climbing stairs and ramps, but never climbing ladders, ropes, or scaffolds. Additionally, the claimant could understand and carry out simple instructions, could have incidental work-related interaction with coworkers and supervisors, but could not have significant interaction with the public in the completion of job duties (Tr. 16). The ALJ concluded that the claimant was not disabled because he could return to his past relevant work as a dump truck driver and food mixer, or alternatively, because there was work he could perform in the regional and national economies, *e. g.*, hand packager, warehouse worker, and laundry worker (Tr. 20-21).

**Review**

The claimant contends that the ALJ erred by failing to properly analyze: (i) the medical source and other source evidence, (ii) his credibility, and (iii) his mental impairments. The undersigned Magistrate Judge finds that the ALJ did fail to properly analyze the medical source evidence, and the decision of the Commissioner should therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant's mood disorder, substance dependence, psychotic disorder rule out malingering, personality disorder, and lumbago were severe impairments; that his hypertension and obesity were nonsevere; and that his alleged migraines were medically nondeterminable (Tr. 14). The relevant medical evidence as to

the claimant's mental impairments reveals that he had limited mental health treatment prior to September 2013. He reported six days of inpatient treatment in 2009 to the consultative examiner, but there are no treatment notes from 2009 in the record (Tr. 365).

On September 17, 2013, the claimant presented to Dr. William Smith and reported back pain, difficulty sleeping, and heavy drinking because "it kills the pain." (Tr. 373-76). Dr. Smith prescribed pain medication, a muscle relaxer, and an antidepressant (Tr. 375). The claimant completed a mood disorder questionnaire at a follow-up appointment on March 26, 2014 (Tr. 396). Dr. Smith then diagnosed the claimant with bipolar disorder not otherwise specified, and prescribed an antidepressant (Tr. 397). At a follow-up appointment on June 3, 2014, Dr. Smith noted the claimant reported no anxiety, depression, or sleep disturbances (Tr. 399). At the same appointment, the claimant completed a Patient Health Questionnaire Form ("PHQ-9") wherein he reported sleep issues, low energy, and trouble concentrating nearly every day over the prior two weeks, and little interest in doing things more than half the days during the same time period (Tr. 400). Dr. Smith concluded the claimant had mild to moderate depression symptoms, and refilled his antidepressant medication (Tr. 400). In September and December 2014, Dr. Smith's treatment notes reflect that the claimant's anxiety and depression were well controlled with medication (Tr. 402, 404).

Consultative examiner Dr. Robert L. Spray, Jr. performed a mental status examination of the claimant on September 20, 2013 (Tr. 365-71). Dr. Spray diagnosed the claimant with (i) alcohol dependence; (ii) mood disorder not otherwise specified with psychotic features, rule out malingering of psychotic symptoms; (iii) personality disorder

not otherwise specified with antisocial and schizotypal traits; and (iv) a global assessment of functioning score of thirty-five to forty-five (Tr. 368). Dr. Spray opined that the claimant's social skills were poor, he was easily agitated by others, and could misinterpret others' intentions (Tr. 368). He also found the claimant's speech articulation was normal, but noted communication was somewhat difficult because of his irritable mood and atypical thinking (Tr. 368). Dr. Spray further opined that the claimant had moderate difficulty with attention and concentration, and would likely have difficulty not only persisting with work-like tasks, but also completing them in a timely manner (Tr. 369). As to the validity of his examination, Dr. Spray noted the claimant gave adequate effort and cooperation, but that his report of symptoms was somewhat erratic (Tr. 369). He also found it "curious" that the claimant consistently interacted with his imaginary friend while in the office setting, but did not do so prior to entering, or after leaving (Tr. 369).

State reviewing physician Dr. Charles Clayton reviewed the claimant's records on November 26, 2013 (Tr. 57-85). He concluded on the Psychiatric Review Technique Form ("PRT") that the claimant had moderate limitations in all three areas of functioning, and that he had no episodes of decompensation (Tr. 63, 77). On the Mental RFC Assessment, Dr. Clayton opined that the claimant was markedly limited in his ability to understand and remember detailed instructions, to carry out detailed instructions, and to interact appropriately with the general public, and was moderately limited in his ability to maintain attention and concentration for extended periods, to work in coordination with or in proximity to others without being distracted by them, to accept instructions and

respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 67-68, 81-82). Dr. Clayton concluded that the claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, and could adapt to a work situation (Tr. 68, 82). His findings were affirmed on review (Tr. 93-94, 109-10).

Regarding his mental impairments, the claimant testified at the administrative hearing that he quit a job in 2013 due to conflicts with his supervisor, and that he gets nervous and shakes when he is around a lot of people (Tr. 38). The claimant further testified that his hallucinations include a friend named "George" and "people walking across the room," and that he has been treated with antipsychotic medication (Tr. 41-42). The claimant stated his typical day includes watching television, checking the mail, sitting outside, and talking to George (Tr. 43, 45). When asked if George ever instructed him to hurt himself or others, the claimant replied "No, George is very nice." (Tr. 43-44).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the

physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ gave great weight to Dr. Spray's skepticism concerning the claimant's hallucinations, but rejected without explanation Dr. Spray's opinions concerning the claimant's social skills, ability to communicate, ability to persist with work-like tasks, and ability to complete work-like tasks in a timely manner. It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). In addition to evaluating Dr. Spray's findings according to the appropriate standards and indicating what weight he was assigning to them, the ALJ should have explained why he found certain aspects of his findings persuasive but not others. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical

opinion, taking only the parts that are favorable to a finding of nondisability. . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

Because the ALJ failed to properly evaluate Dr. Spray's opinion, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 1st day of September, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**